May it please the Court, Learned Counsel, my name is Robert Huntley. Representing the court security officers in this case, two of our lead plaintiffs are here with me in the courtroom, Mr. Hawkins and Mr. Strolberg. I would like to save two minutes for rebuttal, and frankly I wish I had a little more time. I'm going to first address very quickly the due process thing, and then take some time on the Rehabilitation Act. I have to say that I probably could be guilty of malpractice by not having initially put out a separate cause of action of due process in this case. But I think on the whole record here, that is not correct. For more than two years, in every successive pleading... Mr. Huntley, can I ask you this? Is there any way that you could allege or maintain a procedural due process claim without alleging discrimination? Yes. How would that be? There didn't have to be a discrimination case at all. These folks were employees. They were not at will employees. They were for cause employees. And when they are given no Fifth Amendment due process rights to maintain their jobs, that alone is a cause of action for them. In the case of Strolberg, for example, he was fired on regulations that weren't even in effect in the Ninth Circuit until six months later. How would... Let me ask you this way. Why should the Rehabilitation Act preempt equal protection claims but not due process claims? Would not allowing the due process claims to go forward undermine Congress's creation of an exclusive remedial scheme? No, Your Honor. And for this reason, I have four cases in my brief where the due process can go along with a discrimination case because it's a different set of predicate facts. In Mr. Hawkins' case, for example, they're supposed to send his medical records through to the marshal service, then to the doctors in Atlanta, and the ones that would have kept him his job on diabetes never got there. Now, it doesn't matter whether they had their mind made up to discriminate against all these CSOs based on disability. He had a case right there. And I know of no rule of law. Stop to think of it in the big picture. I know of no rule of law that says you can have a statute or court rulings which repeal the Fifth Amendment right to due process. And that's, in effect, what is trying to be done here. And they have no process whatsoever to appeal a wrong determination, a misclassification, a misreading of the test results. And that we have pled from day one. We raised it in every deposition. I deposed five folks from the defense side. In every one, I raised this due process thing. And bear in mind, the way this case was going, the court allowed them to do successive, three successive motions for summary judgment, and did not allow me to do any discovery during that whole time. I went into this case for a year and a half with not a stitch of discovery. Within a week or two after I got my first discovery, I moved to make the technical amendment for due process. I made that motion seven months before the trial date. Now, we had a judge who works very hard. He's from Santa Ana. He was a visiting judge. We were supposed to have hearings, I think, two or three different times during that seven months up in Boise. And he had to cancel them every time. And so then we get two weeks before trial, and he's upset because the due process thing is coming up so close on the heel of trial. Not my fault. I pled it timely. And they had notice. We have notice pleadings in the federal court system. So I'm very disappointed on that, that these marshals, the deputy court security officers of all people, ought to be able to have some due process out of this court system. And it's really a shame that the marshal service would set up a system where there is no due process. And I deposed Ted Stevens, the USMS lawyer who does the final disqualification people. I asked him, do these people have any avenue? And he said no. I asked the medical officer, Chilton, if he knew of any avenue. And they had, doctor, if you make a wrong decision, do they have any avenue at all? He says no, they don't. Not that I'm aware of. And then he's the one that said he wouldn't like it if it were applied to him. So there is no showing by the marshal service of any surprise here whatsoever. They knew about it all the way along. They're the ones that set up no administrative process. Does my four months mean that I have two in addition to this four or not? I was reserving two. You're okay. Just keep going. You have four and a half minutes. Including rebuttal? You can save time for rebuttal. I'm saving time for rebuttal. Well, then I'm going to have to jump to rehabilitation. Okay. You can use your time for rebuttal. The first thing to notice on Sutton, Your Honor, is that Sutton was pled poorly, and it brought up some bad law. The ladies in Sutton only pled that they were disqualified not from a broad range of jobs. They didn't plead a class of jobs at all. All they pled was that they were disqualified from their job. So in our case, we have the deposition testimony of Dr. Jansen, a vocational rehabilitation man. He's the best man in Idaho and perhaps that whole section of the country. And he said that the diabetics, this perception about the diabetics, would disqualify them from 13 classes of jobs that he figured out and hearing nine. He said the individuals in which a diabetic would be disqualified for based on perception of disability include truck driver, bus driver, machine operator, custom service representative, inspector, teacher's aide, production supervisor, airport screener, and corporate security officers. For individuals with a hearing impairment, examples would be disqualified for customer service representative, telemarketer, truck driver, bus driver, sales rep, machine operator, airport screener, inspector, and so forth. And that's in tab 204, appendix 28. And I really would appreciate your reading that tab. Currently, does the law of this circuit require you to provide objective evidence that the impairments you are regarded as having are, in fact, substantially limiting? And if so, where in the record have you established this evidence? Through Dr. Jansen, what I just read. The law of the circuit is? Well, I think it's the law everywhere that you have to show that you're disqualified. This perception would get you disqualified from a broad range of jobs or a class of jobs. But I think it's. My question to you is whether the law of this circuit requires you to provide objective evidence that the impairments you are regarded as having are, in fact, substantially limited. Do you agree with that? No. The law in this circuit, one of the most recent cases on that. What about Thompson? Pardon? What about Thompson? I'm sorry. I can't hear you. What about Thompson? Thompson? Thompson case. Do you not agree that that requires such a showing? One of the cases this Court has recently done, I don't remember what Thompson does, but one of the cases said that seldom will an employer say that I'm thinking of a broad range of jobs and you have to go to outside of what the employer tells you he considered. Okay, so. That's Johnson versus. For a moment you have to establish. Johnson versus Paradise Valley. Is that the one you meant, Your Honor? No. I'm sorry. Did you say Thompson? Johnson. Oh, no, no. Thompson I'm talking about. 121 versus Bedford at 541. Okay. I'm sorry, but I don't have that one in mind. But in Johnson, this Court said. In the name of the doctor, you said established the evidence of, in fact, that your client is, in fact, substantially limited. Dr. Janssen. Dr. Janssen. And he examined your client and was able to testify. Yes. And by deposition and by expert witness report. Okay. Why don't you say, I'll give you a little more time for rebuttal. Thank you. May it please the Court. Eric Fleisig, Green with the Justice Department, representing federal appellees. In this case, the Court took two actions that are at issue on appeal. One was denying the motion to amend the complaint to assert a due process claim. The second was dismissing the Rehabilitation Act claim. Why would it be futile in this case? Your Honor, the question of futility is squarely addressed by Nolan versus Cleland, which is mentioned in our briefs. There, as here, defendant had alleged discrimination against him, or I guess actually it was there or her, sorry. The plaintiff had alleged that the defendant had discriminated against her and that this discrimination had caused her firing. She alleged that she had tried to get a process of review, that she had been coerced to resign, not alleging discrimination. She said, I want a review of my claim that you coerced me to resign, that I involuntarily resigned. Defendants didn't afford that type of procedural review. She claimed that that was a violation of her due process rights. And this Court said, no, the factual predicate for the two claims is the same. That claim is foreclosed, and the rehab, excuse me there, it was Title VII, Title VII is your exclusive remedy. Here, as well, defendants, excuse me, plaintiffs claimed that defendants discriminated against them and resulted in their termination. They sought some kind of procedural review for that termination. Defendants said there is no procedural review. They said that's a violation of my due process rights. And here, likewise, the factual predicate is the same. Nolan v. Cleland is squarely controlling here, and the claim is preempted by the Rehabilitation Act. That is why this claim is futile. I'll note also- We have to make that determination of futility under de novo review, correct? Yes, Your Honor. That is a matter of law that is reviewed de novo. I'll note, however, that the District Court here addressed all of the latent factors in considering whether or not to permit this amendment. And even if this Court believes that futility is not a sufficient ground for affirming, the other grounds that are in the record are sufficient to affirm that in the alternative on the abuse of discretion standard of review. The District Court noted that there had been two prior amendments, one of which had added about 75 plaintiffs and a number of defendants, the other of which had sought to add four or five causes of action and had successfully added the Rehabilitation Act claim that is now on appeal and an ADEA claim. The District Court noted that it would be within his rights simply to say, I said before you had two amendments and that was it. I was closing the door. He declined to rule on that ground and said, I'm going to look at the latent factors. He said, I'm concerned that there is a possibility of prejudice because you're raising a new claim that was not raised in the initial complaint. The District Court said, I've looked at the initial complaint, and all you're doing is asserting a new theory, no new facts. That is precisely the type of amendment that is discouraged under ACRI in this Court's precedence. He eventually found dispositive the futility argument. This Court may affirm on other grounds as well. I point the Court particularly to Ascon Properties v. Mobile Oil, which we cite in our briefs. That's 866-F2-1149. There, the District Court made no specific finding whatsoever, and this Court still found that it could affirm based on the record as a whole. And the facts there closely paralleled the facts here. Namely, it was a new theory that had no additional facts, and there was no reason given for the delay in amendment. It was also a possibility of undue prejudice as a result of the new amendment. And the Court said, we recognize that there is a great deal of discretion that is provided to the District Court in refusing to I will note briefly that if you look at the complaint, we don't believe there's any colorable reading, even under the liberal notice pleading standard of a due process claim here. The due process mentions, the mentions of due process are under a breach of contract claim. We don't believe that that is sufficient to raise a due process claim. The government's position under the Rehabilitation Act that there's no remedy for misinterpretation of a medical test or Well, Your Honor, the Rehabilitation Act provides a number of provisions to challenge inaccurate tests. I mean, the Rehabilitation Act incorporates 42 U.S.C. 12-112. They didn't challenge it here. No, they did not, Your Honor. But there are provisions, 12-112. B-5, excuse me, B-5 is reasonable accommodations. B-3 prohibits discrimination for utilizing standards, criteria, or methods of administration that have the effect of discrimination. B-6, which came up in the Walton case, prohibits using qualification standards, employment tests, or It's regarded as having the limitation that's job-related. Here you have two bureaucracies. You have the ACAL Corporation that hires people, and then they respond to directives that come from another bureaucracy that's based on categorical decision-making, based on reports, medical records, whether they're interpreted correctly or incorrectly. However, the cookie crumbles. The other bureaucracy says terminate this person because they fit this category. I'm not saying it's arbitrary, but it's conveniently bureaucratic. Well, Your Honor, I'm sorry. What is the remedy? If they're wrong, if the diabetic issue comes up? Well, Your Honor, I mean, I'd provide two responses. One is I'd just like to clarify. The Marshal Service does not order that these individuals be terminated, and that's one reason in particular that the due process claim is not available here. That's an issue that's currently pending before the Third Circuit, whether this scheme even provides, whether a due process claim is even viable on its merits. And we would submit that on its merits, this claim would fail at summary judgment as well, and that's an alternative ground to apply. I'm curious about a more mundane question. Yeah, sure, which is how would they challenge it if — Yes, and who is it that's doing the regarding? If somebody is regarded as disabled, who is it that's regarding? Well, Your Honor, I mean, I think the allegation of plaintiffs would be that the Marshal Service is the one here who is evaluating these individuals' fitness. All they do is look at some papers that are flying through the computer, and they hit a button, and they say, well, you know what? We're not going to do that. You won't get argument from me, Your Honor, that we're not the ones who are having the plaintiffs as disabled. But — I think of regarding as sort of an intellectual exercise rather than just — A specific and individualized judgment, yes, that may be correct. And there are provisions of the Rehabilitation Act that would challenge the standards broadly, and Ms. Walton, for example, did press a claim under that particular element of the statute. That claim has not been asserted here. I'll move on since my time is running short. Answer the question, though. What is the remedy? Oh, I'm sorry. The remedy would be if there were no factual predicate of discrimination, one could conceivably bring an APA claim without also alleging discriminatory acts. But whereas here, one has alleged both of those claims together, Noland v.  to you. That is, if the discrimination is the factual predicate. Yes, Your Honor. I mean, plaintiffs are — The idea is that they fail to follow their own rules of review and appeal. Absolutely. That is an APA process. Absolutely correct. But if you place the fact — I mean, in essence, the claim — the argument is plaintiffs are master of their complaint. They can go with the Rehabilitation Act claim as they did here, but then they can't also avail themselves of an alternative scheme that would allow them a run around the exhaustion and timeliness requirements that the Rehabilitation Act requires. If they decide not to avail themselves of the Rehabilitation Act and its remedies, that due process claim that you describe, because it's not relying on any factual predicate of discrimination, would be available. The same was true in Noland v. Cleland, where they had brought the claims. They didn't exactly — It's not a procedural due process claim in Noland, as I understand it. I believe it was, Your Honor. It was. The challenge was you didn't afford me this particular method of appealing my termination. There were two avenues she could use. One was the EEO complaint process. The other was a separate internal process. Noland argued that her second cause of action was not a discrimination claim but a due process claim. That's correct. She argued that her involuntary resignation was caused by the VA's deceit, coercion, and duress, which constituted a taking of a property interest. She's recharacterizing it. What we're talking about here is — just let me pursue the thought. What we're talking about here is the potential that the marshal service did not follow its own procedural rules for making the appeal process, the challenge process, effective. Now, you're saying that in order to pursue that claim, they can't allege a Rehab Act claim. And they can only allege an APA claim. Why can't they allege both as alternative legal theories of recovery? Without necessarily — just because there's a Rehab Act, they can pursue the discrimination aspect claim. But they could accept, even if the service can permissibly get past the regarded-as prong, if they don't allow the CSOs to get a fair chance to present their medical case, that assuming all the rule application is — gets past Rehab Act, why can't they also have a due process claim? With respect, Your Honor, I would say two things. One, I don't think the claim is quite as you've characterized it here. I think the claim is you didn't afford a sufficient process through the marshal service disqualification process in order for it to be a legitimate deprivation — in essence, you've deprived us of a constitutional property interest, which obviously we dispute. But you didn't afford a sufficient process in doing so. Not that you've violated our — not that we've violated our own regulations, which I just suggest might be a separate claim, but that you haven't afforded us enough review of that particular determination. That, I believe, is the crux of the claim plaintiffs raise here. But I will also — no one is a somewhat difficult case to get what the actual process that was being deprived there was, but I believe the reading of it that's correct is that she was afforded two methods of contesting her termination. One was the EEO discrimination claim. The other was this adverse action internal process with the agency. The agency said you can't pursue both of them. You have to go one or the other. Well, that may be a distinction that led to that decision. Say Nolan controls as if there is no ability under any formulation to get a due process claim to address the issues that Judge Goodwin was raising. I don't see that. Yeah, I'm sorry. I didn't mean to suggest that there is never going to be a due process review here. It would be futile for them to be given a chance to re-plead on a pure due process claim. You mean to remove their Rehabilitation Act claim from the complaint? Or just plead in the alternative? Well, Your Honor, that wasn't the decision that the district court was faced with. And, again, I think if it were pled in the alternative, that would not be sufficient here. The idea of Nolan is that you need to make sure the two need to be not relying on the same set of facts. That's the lesson of Nolan. I see my time is more than up. I don't know if there are any other questions. Okay. Thank you. Mr. Huntley, you have some time left. I'll let you go over because I let him go over. I'd like to make one 45-second point and three 15-second points. If you hold to that, you'll get the gold medal award. Okay. I've never heard an attorney keep to his promise on time. Well, Your Honor, thank you very much. On this futility thing, there are five cases in our brief where we distinguish it and show that we have an entitlement to it and we distinguish Nolan. The McKenna case versus Weinberger, they allowed discrimination and due process. The Villiconga case versus Mueller allowed Title VII suit for unconstitutional action other than discrimination. Now, when you violate the Fifth Amendment and don't give people due process, that's something other than discrimination. Otto versus Heckler said you can have a Bivens remedy where the injury is not attributable to personnel actions, which may be remedied under federal statutory scheme. Ray versus Nemo at page 24 of our blue brief holds that an employee who alleged sex and age discrimination could also bring a procedural due process claim when the VA didn't follow its own rules. Here I would submit that the Marshal Service didn't follow the United States Constitution. When you have a contract that's not at will, you have a right to due process, and you can't take away the Fifth Amendment and repeal the Fifth Amendment this way. On the Rehabilitation Act, I would mention the counsel said we only plead due process in the contract case. In our Rehabilitation Act claim, we put these words in right in the rehabilitation cause of action. Failure to provide the plaintiff with a meaningful and appropriate process of review and analysis of medical information. Now, if that wasn't notice of a due process in this case, well, I think it is. The question came from the bench that, well, can you contest the standards? I don't think you can contest the standards, and we don't contest the standards. And if they were to be contested, it would have had to be under the Administrative Procedure Act during the rulemaking process, and, in fact, there was never any rulemaking done here. These were never even promulgated as a federal rule of any kind. They just came from the circuit court group of judges. How were you attempting, how did you want to plead your due process claim as part of the Rehabilitation Act claim? No, it's a standalone, alternate claim. And, in fact, one thing I raised with Judge Carter, I said, Judge, if you say I don't have a Rehabilitation Act claim, why don't I have a, why are we into this discussion about futility? They rely, do they not, upon the same predicate facts? They are not relying on, they're not relying on the same, The minute they didn't send Hawkins' records forward so that the doctor in Atlanta could read them and save his job, that wasn't ADA discrimination. That was just a bureaucratic mess-up. When they put Stroberg out of business because on regulations that weren't even adopted in the Ninth Circuit yet until six months later, that's not discrimination, that's just breach of his contract of employment relationship. And due process rides with these contracts. So Marshall Service is simply trying to set up a scheme here where there's no due process for CSOs. All right, fine. Thank you, counsel. Again, we appreciate the good arguments, and the case argued is submitted. We will stand in for the day.
judges: Goodwin, O'scannlain, Fisher